IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLINTON WALKER, | ) |
|                Plaintiff, | ) Civil Action No. 09 - 282 |
| v. | ) Chief District Judge Gary L. Lancaster |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| G. CAMPBELL; CO 1 BLAKER; CO 1 CROUCH; CO 1 MARTUCCI; JOHN DOE, *Hearing Examiner;* SUSAN COWAN, *Unit Manager*; JOHN/JANE DOE, *Unit Manager*; REV ALODA MENCHYK, *Facility Classification Program Director;* LOUIS S. FOLINO, *Superintendent*; TIMOTHY I. MARK, *Deputy Chief Counsel for Hearing and Appeals,* | ) |
|                Defendants. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that Defendants' Partial Motion to Dismiss (doc. no. 50), as clarified during the hearing and as set forth below, be granted.

### II.  REPORT

Plaintiff, Clinton Walker, a prisoner currently in the custody of the Pennsylvania Department of Corrections (DOC) in the State Correctional Institution at Greene(SCI-Greene), has brought the instant action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, alleging violations of his rights as protected by the First, Eighth, and Fourteenth Amendments of the United States Constitution. Defendants have filed a Partial Motion to Dismiss Plaintiff's Second Amended Complaint (doc. no. 50). For the reasons stated below, the motion should be granted.

A. <u>Standard of Review - Motion to Dismiss Under Rule 12(b)(6)</u>

A complaint must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v.Twombly</u>, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. *See* <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) (citing <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. <u>Bell Atlantic Corp.</u>, 550 U.S. at 555 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp.</u>, 550 U.S. at 555. Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' <u>Coronado v. Goord</u>, No. 99 Civ. 1674, 2000 WL 1372834, at *2 (S.D.N.Y. 2000) (quoting <u>Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 883, 887 (2d Cir. 1987)).

Courts consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. <u>Pension Benefit Guar. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). In addition, factual allegations within documents described or identified in the complaint may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). A district court may consider these documents, as well as

2

indisputably authentic documents, without converting a motion to dismiss into a motion for summary judgment. <u>Spruill v. Gillis</u> 372 F.3d 218, 223 (3d Cir.2004); <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

### B. <u>Plaintiff's Allegations</u>

In 2008, Walker was assigned to work in the law library pursuant to DC-ADM 007-02(C) of the DOC policy and procedures. Defendant Officers Crouch and Blaker harassed Walker by vocally questioning the value of providing legal assistance to other inmates and suggesting that he was causing trouble by providing such assistance. While employed at the law library, Walker became aware of an investigation being conducted by prison guards and security personnel concerning staff members (both inmates and prison employees) that worked in the library (Library Personnel). One of the targeted employees, Debbie Tustin, was allegedly having inappropriate relationships with Walker and several other inmates, among other possible offenses contrary to DOC policy. Between August and October of 2008, certain prison officials, including Defendants Martucci, Campbell, Crouch and Blaker, repeatedly asked Walker to be an informant concerning the activities of the above mentioned Library Personnel. Walker repeatedly refused to be an informant. Crouch, Blaker and Martucci told Walker that, unless he changed his mind and served as an informant, he would be given a misconduct report and would not be eligible for a "promotional transfer." This warning was issued to Walker a few days before Walker was accused of possessing a weapon.

On or about October 5, 2008, approximately seven days after the aforementioned threat, another inmate, Williams, was issued a misconduct report for possessing and hiding a weapon. Defendants Crouch, Blaker, Campbell, and Martucci signed the misconduct report stating that they had viewed a video tape showing Williams (as opposed to Walker) possessing and hiding a weapon.

On or about October 7, 2008, approximately two days after Williams was issued the misconduct report, Defendant Campbell wrote a misconduct report against Walker for possessing and hiding a weapon. The report was materially identical to the misconduct report filed against Williams except that Walker's name was put in place of William's. The new misconduct report was witnessed by Defendants Campbell, Crouch, Blaker, and Martucci. Based on this purported observation, Defendants Campbell, Crouch, Blaker, and Martucci released Williams and then placed Walker in the RHU.

On or about October 9, 2008, Defendant John Doe Hearing Examiner refused to allow Walker to view the videotape, refused to allow Walker to use the videotape as evidence, and refused to allow Walker to call Defendant Campbell and inmate Williams as witnesses. Plaintiff was found guilty of the misconduct and received 120 days disciplinary time. Plaintiff appealed this decision and on October 24, 2008, Program Review Committee members Cowan, Dietz, and Menchyk denied Walker's appeal. On November 3, 2008, Superintendent Folino affirmed this decision and on November 10, 2008, Defendant Mark denied Walker's final appeal.

Defendants filed a Partial Motion to Dismiss wherein they assert that all of Plaintiff's claims except for the Equal Protection and retaliation claims against Campbell, Blaker, Crouch, and Martucci should be dismissed. Oral argument took place on April 26, 2010[1]. This Court agrees with the Defendants.

---

1. Plaintiff was represented, for purposes of this motion only, by students from the Duquesne University School of Law Civil Rights Litigation Clinic, who are commended by the undersigned for their arguments, both written and oral, on Plaintiff's behalf.

C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207.

The mere hypothesis that an official is personally involved in complained of conduct "simply because of his [supervisory] position" is an insufficient basis for finding Section 1983 liability. Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005) (allegations of personal liability on the part of the state Attorney General were insufficient where plaintiff did not specifically allege that the A.G. ordered the acts of his "underlings," or had acquiesced to those acts with contemporaneous knowledge of them). To impose liability on a supervisory official there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have

communicated a message of approval to the offending subordinate." Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (emphasis added). Moreover, supervisory liability still requires an underlying constitutional violation. City of Los Angeles v. Heller, 475 U.S. 769, 799 (1986); Camp v. Brennan, 54 Fed. App'x 78, 81-82 (3d Cir. 2002).

Defendants have filed a Partial Motion to Dismiss on the following grounds.

### 1. Plaintiff has not stated an Eighth Amendment Claim

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns. A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. Farmer, 511 U.S. at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id*. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind. The Supreme Court clarified this deliberate indifference standard in Farmer as follows.

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

Plaintiff's allegations do not show that he was deprived of any basic human need such as food, clothing, shelter, sanitation, medical care or personal safety. Nor do they show that any defendant acted, if at all, with deliberate indifference. The Constitution does not mandate comfortable prisons. Rhodes, 452 U.S. at 349. Prisons housing "persons convicted of serious crimes cannot be free of discomfort." *Id*. Plaintiff's allegations concerning searches, construed in the broadest possible sense, do not rise to the level of a Eighth Amendment violation. *See* Brown v. Blaine, 185 Fed. App'x 166 (3d Cir. 2006) (collecting cases).

In addition, to the extent that Plaintiff is raising an Eighth Amendment claim regarding his confinement in disciplinary custody in the restricted housing unit, the Pennsylvania courts unanimously have held that confinement in restrictive housing conditions, without more, does not

violate the Eighth Amendment. *See, e.g.*, Griffin v. Vaughn, 112 F.3d. 703 (3d Cir. 1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment); Fortson v. Kelchner, 2009 WL 693247, At *3 (W.D. Pa. Mar. 13, 2009) (granting Defendants' Motion to Dismiss as to Plaintiff's Eighth Amendment claim regarding confinement in the RHU and SMU); Dantzler v. Beard, 2007 WL 5018184, at *11-12 (W.D. Pa. Dec. 6, 2007) (holding that the conditions of confinement in the SMU and LTSU did not amount to cruel and unusual punishment in violation of the Eighth Amendment); Woods v. Abrams, 2007 WL 2852525, 14 (W.D. Pa. Sep. 27, 2007) (holding that the conditions of confinement in the LTSU did not satisfy the objective component of an Eighth Amendment claim); Banks v. Beard, 2006 WL 2192015, at *11 (W.D.Pa. Aug. 1, 2006) (same); Rivera v. Pennsylvania Dept. of Corrections, 837 A.2d 525, 530-532 (Pa. Super. 2003) (same).

Consequently, Defendant's Partial Motion to Dismiss should be granted as to Plaintiff's Eighth Amendment claims. *Accord* Milhouse v. Arbasak, Civ. No.07-01442, 2009 WL 1119488, 3 (E. D. Pa. April 27, 2009) (holding that mere placement in SHU and requirement of routine strip searches do not violate the Eighth Amendment).

2. Plaintiff's 120-day disciplinary custody sanction does not trigger the<br>procedural protections of the Fourteenth Amendment's Due Process Clause

Defendants next claim that any due process claim that may be contained in the Second Amended Complaint fails as a matter of law because Plaintiff's due process rights were never triggered. This Court agrees. In this regard, the Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. Meachum v. Fano, 427 U.S. 215, 224 (1976). The Due Process Clause shields from

arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests." Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). The types of protected liberty interests are not unlimited. The interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's due process claims is whether Defendants' actions impacted a constitutionally-protected liberty interest. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt, 459 U.S. at 466. A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain free from administrative segregation. *See, e.g.*, Hewitt, 459 U.S. at 468; Wolff, 418 U.S. at 556; Montayne v. Haymes, 427 U.S. 236, 242 (1976); Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995); Layton v. Beyer, 953 F.2d 839, 845 (3d Cir. 1992). Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in remaining free from administrative detention.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not

impact a protectable liberty interest unless they result in an "<u>atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life</u>."  <u>Sandin</u>, 515 U.S. at 483 (emphasis added).  Applying this test, the Supreme Court concluded that the prisoner in <u>Sandin</u> did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence.  In making this determination, the Supreme Court looked at two basic factors:  1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive. After reviewing these two factors, the Court concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

     First, it must be noted that a prisoner does not have a constitutional right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest. <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988). In other words, the mere filing of false charges against an inmate does not constitute a *per se* constitutional violation.  *Id*.  Thus, prisoners cannot claim they were denied a constitutional right based solely on the contention that officials filed false or unfounded misconduct charges.  <u>Smith v. Mensinger</u>, 293 F.3d 641, 653-54 (3d Cir.2002) ("so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough ...").  Thus, even if false charges impaired a protected liberty interest, as long as prison officials granted the inmate a hearing and an opportunity to be heard, the filing of unfounded charges did not give rise to a procedural due process violation actionable under section 1983.

In light of the Supreme Court's ruling in Sandin, however, Plaintiff has not even demonstrated that he had a constitutionally protected liberty interest that was offended by Defendants' actions in allegedly issuing a false report. Specifically, in deciding whether a protected liberty interest exists under Sandin, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)). In this case, as a result of his misconduct, Plaintiff received 120 days of disciplinary time. Recently, the Court of Appeals for the Third Circuit held that, absent allegations showing that conditions in disciplinary confinement for 930 days imposed an atypical and significant hardship, the inmate was not entitled to procedural protections during prison disciplinary proceedings. *See* Young v. Beard, 227 Fed. Appx. 138, 2007 WL 824172 (3d Cir. 2007).

The facts before this Court do not support a due process violation. *See, e.g.,* Strong v. Ford, 108 F.3d 1386 (Unpublished Opinion), 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of an atypical hardship on the inmate in relation to the ordinary incidents of prison life). Thus, Defendants' Partial Motion to Dismiss should be granted as to this claim.

3. Plaintiff cannot state a cognizable retaliation claim based on his jailhouse lawyering activities

Defendants further claim that they are entitled to dismissal of Plaintiff's retaliation claims to the extent they are based on alleged retaliation for assisting other inmates in the preparation of grievances and/or lawsuits. During the hearing in this matter, Defendants clarified that they are moving to dismiss Plaintiff's retaliation claims only to the extent they are based on the Eighth Amendment. In this regard, it is well settled that retaliation for the exercise of a constitutionally

11

protected right is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things:  (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action.  *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.  Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner.  *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Defendants have asserted that they are moving to limit Plaintiff's retaliation claims solely to the extent that they can not be based on the Eighth Amendment.  In this regard, Plaintiff claims that he has an Eighth Amendment right not to participate in an internal investigation operation and cites to Cooper v. Beard, Civil No. 06-0171, 2006 WL 3208783, 10 (E.D. Pa. Nov. 2, 2006) to

support his assertion. While the Cooper Court so held, it based its decision on rulings from other Courts that held that a correction officer's labeling a prisoner a snitch constitutes an Eighth Amendment violation and, thus, it followed that an inmate's refusal to become one is protected. *Id*. at \*12. To this end, the Cooper case cited court cases that had reached this conclusion without specifically deciding the constitutional basis for such a right. *Id*.

As stated above, the Eighth Amendment protects an individual from cruel and unusual punishment. While this Court agrees that a prison guard's labeling an inmate as a snitch in order to cause him harm by other inmates can state an Eighth Amendment excessive force claim, it can not be said that the mere asking for an inmate's help in an internal investigation constitutes deliberate indifference such as to rise to the level of an Eighth Amendment violation. As these are the facts presented in the instant action, Defendants' Partial Motion to Dismiss should be granted in that Plaintiff's retaliation claims can not be grounded upon a violation of his rights as protected by the Eighth Amendment.[2]

### 4. Plaintiff's Second Amended Complaint does not state a cognizable conspiracy claim

Defendants next claim that Plaintiff's conspiracy claim must be dismissed because of the intra-corporate conspiracy doctrine set forth in Shingara v. Skiles, 274 Fed. App'x 164 (3d Cir.

---

2. As Defendants point out, the Supreme Court has held that inmates do not possess an independent First Amendment right to provide legal assistance to fellow inmates. Shaw v. Murphy, 532 U.S. 223 (2001). Plaintiff argues that Shaw is distinguishable and inapplicable because he fulfilled his duties in the law library pursuant to DOC policy DC-ADM 007-02(C), which expressly authorized him to assist other inmates at the law library (doc. no. 57, p. 6). Defendants do no address this issue in their Reply (doc. no. 61). As this issue is not before the Court, it need not resolve this issue. Notwithstanding, the Court notes that Plaintiff's citation to pre-Shaw cases do not support its contentions and is inapplicable to the question presented. The same is true with regard to his citation to Jones v. Chandler, Civ. No. 04-1877, 2005 WL 1941314, at \*3 (E.D. Pa. Aug. 09, 2005) as the district court therein did not hold that jailhouse lawyering was a protected activity as the prisoner also claimed that his activity in filing grievances provided the basis for his retaliation claim.

2008). Under this doctrine, because all of the Defendants are agents of the DOC, Defendants cannot be liable for civil conspiracy as a single entity can not conspire with itself. At oral argument Plaintiff clarified that he was raising his conspiracy claim against Defendants in their individual capacities. The intra-corporate conspiracy doctrine does not apply in this situation. *See* Revak v. Liberum, Civil No. 08-691, 2009 WL 1099187, 2 (W.D. Pa. April 23, 2009). Thus, Defendants' Partial Motion to Dismiss should be granted as to Plaintiff's conspiracy claim against Defendants in their official capacity but Plaintiff's individual conspiracy claim remains against the remaining defendants.

### 5. Plaintiff has failed to adequately allege personal involvement against Cowan, Menchyk, Folino, and Mark, John Doe and Jane Doe

Defendants next argue that Plaintiff has failed to allege personal involvement against the Defendants identified above in that the only allegations as to these Defendants relate to their participation in Plaintiff's misconduct and appeals therefrom. This Court agrees.

"A civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." Evancho v. Fisher, 423 F.3d at 353. As Defendants point out, Plaintiff fails to allege facts that, if proven, would show that any of the Defendants identified above had any personal involvement in the alleged violations of Plaintiff's constitutional rights. *See* Rode v. Dellarciprete, 845 F.2d at 1208 (holding that the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement);Jefferson v. Wolfe, Civil No. 04-44, 2006 WL 1947721, *17 (W.D.Pa. July 11, 2006) (holding that mere involvement in misconduct process does not show personal involvement necessary under 42 U.S.C. § 1983); Watkins v. Horn, Civil No. 96-4129 1997 WL 566080, *4 (E.D. Pa. Sept. 5, 1997) (holding that concurrence in an administrative appeal process is insufficient to allege personal involvement); Garfield v. Davis, 566

F.Supp. 1069, 1074 (E.D.Pa. 1983) (holding that affirmation of a Program Review Committee decision insufficient to show personal involvement). Accordingly, Defendants Partial Motion to Dismiss should be granted against these defendants based on their lack of personal involvement. This Court agrees with Defendants that Plaintiff's unsupported assertions that "upon information and belief [the defendants decisions were] made in furtherance of the conspiracy to retaliate for Plaintiff's protected speech and expressive conduct as alleged herein" do not alter this conclusion in light of <u>Twombly</u> and <u>Iqbal</u>.

### III.     <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that Defendants' Partial Motion to Dismiss (doc. no. 50), as clarified during the hearing and as set forth above, be granted.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections may constitute a waiver of that party's appellate rights.

                                                           Lisa Pupo Lenihan
                                                           U.S. Magistrate Judge

May 4, 2010

cc:    Clinton Walker
        EC - 4925
        175 Progress Drive
        Waynesburg, PA  15370