IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLINTON WALKER, | ) | |
| | ) | Civil Action No. 09 - 282 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Judge Gary L. Lancaster |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| G. CAMPBELL; CO 1 BLAKER; CO 1 | ) | |
| CROUCH; and CO 1 MARTUCCI, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment (ECF No. 89) be granted.

### II.    REPORT

Plaintiff, Clinton Walker, a prisoner currently in the custody of the Pennsylvania Department of Corrections (DOC) in the State Correctional Institution at Greene (SCI-Greene), filed the instant action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, alleging violations of his rights as protected by the First, Eighth, and Fourteenth Amendments of the United States Constitution.  On December 28, 2009, Defendants filed a Partial Motion to Dismiss Plaintiff's Second Amended Complaint wherein they asserted that all of Plaintiff's claims except for the Equal Protection and retaliation claims against Campbell, Blaker, Crouch, and Martucci should be dismissed.  Following oral argument, this Court issued a Report and Recommendation on May 4, 2010, recommending that Defendants' Partial Motion to Dismiss be granted (ECF No.

66).  The District Court adopted the Report and Recommendation on July 7, 2010 (ECF No. 71) and granted Defendants' Partial Motion to Dismiss.

Following discovery, on March 14, 2011, Defendants filed a Motion for Summary Judgment with regard to the remaining claims (ECF No. 89).  For the reasons that follow, this motion should be granted.

## A. Applicable Legal Standard

Presently pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 89).  Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact.  National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992).  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Brown v. Grabowski,

922 F.2d 1097, 1111 (3d Cir. 1990) (quoting <u>Anderson</u>, 477 U.S. at 251–52).  If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable ... or is not significantly probative," then summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249–50.  Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed.R.Civ.P. 56(c); <u>Celotex</u>, 477 U.S. at 324; <u>J.F. Feeser, Inc., v. Serv–A–Portion, Inc.</u>, 909 F.2d 1524, 1542 (3d Cir. 1990).

### B.  Relevant Facts and Allegations

Plaintiff, Clinton Walker, an inmate currently in the custody of the Pennsylvania Department of Corrections has been housed at SCI-Forest since February, 2010.  Prior to that time, he was housed at SCI-Greene for approximately 10 years.  In 2008, Walker was assigned to work in the law library at SCI-Greene.  His duties included assisting other inmates in filing and preparing legal papers.  While employed at the law library, Defendants Crouch and Walker repeatedly questioned Walker about the value of providing legal assistance to other inmates.

Early in 2008, an investigation was conducted by prison guards and security personnel concerning staff members (both inmates and prison employees) that worked in the library.  One of the targeted employees, Debbie Tustin, the prison librarian, was accused of having inappropriate relationships with inmates.  Walker asserts that Defendants Martucci, Campbell, Crouch and Blaker, repeatedly asked Walker to aid in their investigation.  As a result of Walker's refusal to cooperate, as well as his jailhouse lawyering activities, Walker believes that they developed antagonism toward him.  Specifically, Walker claims that these Defendants told him that, unless he served as an informant, he would be given a misconduct report and would not be

eligible for a promotional transfer. The investigation concerning the prison librarian was completed several months prior to October of 2008.

On October 5, 2008, a shank wrapped in toilet paper was found under the mailbox on D Block, A side, at SCI-Greene during a search conducted by Defendants Campbell, Blaker, Crouch and Martucci. Initially, after reviewing the Vicon Recording System, Corrections Officer Campbell issued misconduct No. A353967 to inmate Byron Williams who resided in Cell DA #36 at the time. The officers who wrote the misconduct report identified inmate Williams based on the fact that they thought the perpetrator exited out of Cell # 36 prior to planting the contraband.

Freddy R. Nunez was assigned to be the hearing examiner for misconduct # A353967. Upon reviewing the videotape of the incident, Nunez realized that the officers had identified the wrong cell from which the perpetrator exited on the date the weapon was planted. The correct cell was DA #37. Thus, Nunez dismissed the misconduct against Williams and on October 7, 2008, misconduct report A353980 was issued against inmate Walker who resided in Cell DA #37.

On October 9, 2008, Inmate Walker physically appeared before Nunez for his misconduct hearing and Nunez recognized him from the video footage. As shown on the video and recounted in the misconduct report, an inmate believed to be Walker, and who exited Walker's cell, went towards the mail box located by the exit of the unit. When an officer walked toward him, he turned away from the mailbox, placed something inside his shirt, and then headed to the shower area. While in that area, he can be seen fidgeting with something wrapped in toilet paper or tissue. He then goes to lunch and returns to the block a short time later. Immediately upon reentering the block, he abruptly turned in the direction of the mailbox and disappeared for

sufficient time in which to plant a weapon. The weapon was discovered under the mailbox shortly thereafter. Based on this evidence, Nunez found Walker guilty of the charges and sanctioned him to 120 days. Prior to this incident, Nunez did not know inmate Walker, nor did he know anything about him. He also did not know anything about any investigation into the law library or librarian at SCI-Greene.

Plaintiff appealed the disciplinary decision and on October 24, 2008, Program Review Committee members Cowan, Dietz, and Menchyk denied Walker's appeal. On November 3, 2008, Superintendent Folino affirmed this decision and on November 10, 2008, his final appeal was denied. As a result of the imposition of sanctions after the guilty finding relating to this misconduct, Plaintiff lost his prison job.

### C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). The two claims that remain are Plaintiff's retaliation claim and Plaintiff's Equal Protection claim. These claims are discussed below.

1.      First Amendment  - Retaliation

In his Second Amended Complaint, Plaintiff alleges that Defendants retaliated against him due to his jailhouse lawyering activities and his refusal to aid in their library investigation against Ms. Tustin. He claims that these retaliatory actions included fabricating a misconduct

report, refusing to provide a fair misconduct hearing, refusing to provide a fair appeal hearing and/or process, transferring him to the RHU for over 200 days, firing him from his library job, reducing his wages, changing his security rating, and preventing him from receiving a promotional transfer to a facility closer to his home and family. In his deposition, Plaintiff identified verbal harassment, the issuance of misconduct A353980, and the confiscation of his legal work on May 17, 2009 as retaliatory actions by Defendants.

It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

With respect to the first factor, it is well settled that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right. Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). Accordingly, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied. Rauser, 241 F.3d at 333. Rather, the first requirement a Plaintiff must show is that the conduct which led to the alleged retaliation was constitutionally protected. *Id*.

The second element requires a prisoner to show that he suffered some "adverse action" at the hands of the prison officials. A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *See* Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Adverse actions that are sufficient to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser, 241 F.3d at 333, and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.

The third factor requires that there be a causal link between the exercise of the constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. This may be established by evidence of a temporal proximity between the prisoner's protected activity and the defendant's adverse action; however, the timing of the alleged retaliatory action must be suggestive of retaliatory motive. *See* Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007) (to show a causal connection, a plaintiff must prove "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link"); Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional

right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In establishing the elements of a retaliation claim, a plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (internal citations omitted). Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Finally, allegations of *de minimis* acts of retaliation do not state a claim under § 1983. Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999); Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) (holding that a *de minimis* retaliatory act is outside the ambit of constitutional protection). Using these precepts, the Court will review Plaintiff's retaliation claims.

a. Constitutionally Protected Activity

The first element Plaintiff must prove is that the conduct which led to the alleged retaliation was constitutionally protected. In this regard, Plaintiff claims that Defendants retaliated against him based on his activities in assisting other inmates in the preparation of grievances and/or lawsuits and for his refusal to act as a snitch. As to the first contention, the Supreme Court has held that inmates do not possess an independent First Amendment right to provide legal assistance to fellow inmates. Shaw v. Murphy, 532 U.S. 223 (2001). Thus, it is

not at all clear whether Plaintiff has met even the first element of a retaliation claim, *i.e.*, showing that the conduct which led to the alleged retaliation was constitutionally protected. *See* Smith v. Maschner, 899 F.2d 940, 950 (10th Cir.1990) (holding that, because an inmate does not have a protected interest in providing legal assistance to other inmates, he cannot assert retaliation claims for such activities). Moreover, if Plaintiff is attempting to allege that Defendants asked him to be a "snitch" against Ms. Tustin, this would not be a constitutionally-protected activity, thereby failing the first step of proving retaliation. *See* Bennett v. Goord, Civil No. 03-6577, 2006 WL 2794421, 12 (W.D.N.Y. Aug. 1, 2006). Thus, Plaintiff has not shown, as a matter of law, that he has even met the first prong of a retaliation claim.

### b. Adverse Action

The second element that Plaintiff must prove is that he was subjected to adverse actions by the prison officials. Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. This objective inquiry is not static across contexts; it must be tailored to the different circumstances in which retaliation claims arise. Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999) ("Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse.").

Here, Plaintiff claims that Defendants verbally harassed him, issued a false misconduct against him, and confiscated legal work on or about May 17, 2009. Verbal threats or verbal harassment do not constitute adverse action for purposes of stating a retaliation claim under the First Amendment. Burgos v. Canino, 358 Fed. Appx. 302, 306 (3d Cir. 2009) ("because threats alone do not constitute retaliation, the claim relating to the threat failed") (citing Maclean v.

Secor, 876 F.Supp. 695, 699 (E.D. Pa. 1995)); Bartelli v. Lewis, Civil No. 04-0908, 2005 WL 2406048, at *2 (M.D. Pa. Sept.29, 2005) ("we determine that verbal threats do not constitute an 'adverse action' and, therefore, do not fulfill a requisite element of a retaliation claim"). As such, Plaintiff can not state a retaliation claim based on alleged verbal threats.

Moreover, Plaintiff can not show that the confiscation of his legal work constitutes adverse action. Inmate Walker left his legal work in the library on or about May 17, 2009. The legal work was confiscated from another inmate, who picked it up. Walker filed a grievance about this issue and his legal work was returned on June 13, 2009. Based on these facts, it cannot be reasonably argued that this action would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Rather, Walker accidently left a copy of a complaint that had already been filed in the prison library. That copy was picked up by another inmate, and prison personnel, acting pursuant to policy, confiscated the paperwork from that inmate, who was not permitted to have it. The copy was returned to Plaintiff less than a month later. Thus, as Plaintiff did not suffer an "adverse action," he cannot fulfill the second requisite for a retaliation claim based on this allegation.

With regard to the filing of the allegedly "false" misconduct, which resulted in Plaintiff being sanctioned to disciplinary confinement, the loss of his prison job, the change in his security classification and the loss of a promotional transfer, such activity would be sufficient to deter a person of ordinary firmness from engaging in constitutionally protected activity. *See* Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2002) (holding that prisoner's allegation that he was falsely charged with misconducts in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (holding that an allegation that a prisoner was kept in administrative segregation to punish him

for filing civil rights complaints stated a retaliation claim). As a result, Plaintiff has satisfied the second prong of his retaliation claims arising from such alleged act.

c. <u>Causation</u>

The third factor requires that there be a causal link between the exercise of the constitutional right and the adverse action taken against the prisoner. <u>Rauser</u>, 241 F.3d at 333-34. This may be established by evidence of a temporal proximity between the prisoner's protected activity and the defendant's adverse action; however, the timing of the alleged retaliatory action must be suggestive of retaliatory motive. *See* <u>Lauren W. ex rel. Jean W. v. Deflaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007) (to show a causal connection, a plaintiff must prove "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link"); <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 512 (3d Cir. 2003) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link) (citing <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 503 (3d Cir. 1997)).

In the instant case, the undisputed evidence reveals that the investigation concerning Ms. Tustin was completed several months prior to October, 2008. There was no ongoing investigation into SCI-Greene's library or its staff as of October 5, 2008, the date of the search that revealed the hidden shank. Moreover, Walker was found guilty of the misconduct by Hearing Examiner Nunez. At the time he found Walker guilty of the charges of misconduct # A353980, Nunez did not know anything about any investigation into the law library or librarian at SCI-Greene, and didn't know Walker prior to this incident. Thus, it is not clear that Plaintiff

has established a causal link between his allegedly protected activity and the misconduct at issue as required to state a *prima facie* retaliation claim.

Notwithstanding, if the plaintiff proves the required three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. <u>Mt. Healthy</u>, 429 U.S. at 287. The filing of a prison disciplinary report is not actionable under 42 U.S.C. § 1983 as prohibited "retaliation" unless the report is, in fact, false. In other words, the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not filed a grievance. *See* <u>Harris-Debardelaben v. Johnson</u>, 121 F.3d 708, 1997 WL 434357, at *1 (6th Cir. July 31, 1997); <u>Hynes v. Squillace</u>, 143 F.3d 653, 657 (2d Cir.), *cert. denied*, 119 S.Ct. 246 (1998); <u>Henderson v. Baird</u>, 29 F.3d 464, 469 (8th Cir. 1994) (a finding of guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim."), *cert. denied*, 115 S.Ct. 2584 (1995). *See also* <u>Carter v. McGrady</u>, 292 F.3d 152 (3d Cir. 2002) (noting that even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering); <u>Allah v. Al-Hafeez</u>, 208 F. Supp. 2d 520 (E.D. Pa. 2002).

Here, the evidence is as follows. On October 5, 2008, during a search of a common area on D Block, A side, at SCI-Greene, a weapon wrapped in toilet paper tissue was found under the mailbox. After the weapon was found, officers reviewed the video surveillance tapes and issued a misconduct to inmate Byron Williams who resided in Cell DA#36 at the time. The officers who wrote the misconduct report identified inmate Williams based on the fact that they thought the perpetrator exited out of Cell # 36 prior to planting the contraband. Upon reviewing the

videotape of the incident, Nunez realized that the officers had identified the wrong cell and that thus inmate Williams did not commit the charges contained in the misconduct. Thus, Nunez dismissed the misconduct against Williams with prejudice. After the misconduct against Williams was dismissed with prejudice, a new misconduct report was issued against inmate Walker, who resided in Cell DA#37, out of which the perpetrator exited on the date the weapon was planted.

When inmate Walker appeared for his misconduct hearing, Nunez recognized him from the video footage. That footage clearly showed inmate Walker exit his cell and walk toward the mail box located by the exit of the unit. When an officer walked toward him, he turned away from the mailbox, placed something inside his shirt, and then went to the shower area. While in that area, he can be seen fidgeting with something wrapped in toilet paper or tissue. He then went to lunch, and retured to the block a short time later. Immediately upon reentering the block, he went directly toward the mailbox, where the weapon was later found. At the misconduct hearing, Plaintiff admitted that he was fiddling with tissue paper in his pocket on that date. Moreover, in his deposition, Plaintiff admitted that he was in possession of a gambling ticket on the date the weapon was found, and was wrapping this ticket in tissue.

The hearing examiner found a preponderance of the evidence, based mainly on the video evidence, to support the charges of possession of contraband and failure to report the presence of contraband, and sanctioned Plaintiff with 120 days of disciplinary time (ECF No. 90-1, p. 28). The evidence presented constitutes "some evidence" sufficient to support a prison disciplinary conviction. *See* Superintendent v. Hill, 472 U.S. 445, 455-56 (1985).

Plaintiff's misconduct has not been overturned despite the availability of review at three levels of the administrative system provided by the Pennsylvania Department of Corrections.

13

Plaintiff is legally guilty of misconduct. He can not collaterally attack the misconduct on the basis that the misconduct nevertheless is "false" so long as the disciplinary sanction is supported by some evidence. *See* Alexander v. Fritch, 396 Fed. App'x 867, 873–74 (3d Cir. 2010); Fortune v. Hamberger, 379 Fed. App'x 116, 121 (3d Cir. 2010); Romansky v. Stickman, 147 Fed. App'x 310, 312 (3d Cir. 2005); Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002). Consequently, Defendants are entitled to summary judgment as to Plaintiff's retaliation claim alleging filing a false misconduct charge.

2.      Equal Protection

Plaintiff raises two Equal Protection Claims based on race. First, he claims that Defendants did not subject non-African-American prisoners employed in the library to the disparate treatment inflicted on Walker, including but not limited to, fabricated misconduct reports, unfair misconduct hearings, and transfers to the RHU. Second, he claims that in March of 2009, all of the inmate workers of the library were locked up. He claims that the black workers were given misconducts and the white ones were released without incurring misconducts.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' " Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)). *See also* United States v. Armstrong, 517 U.S. 456 (1996) (Equal Protection Clause prohibits decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification. Classifications involving suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened or "strict" scrutiny. City of Cleburne, 473 U.S. at 439. Other classifications are subject to the "rational basis" test, which requires that a classification need only be rationally related to a legitimate state interest to survive an equal protection challenge. F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993) (statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts); Chapman v. United States, 500 U.S. 453, 465 (1991).

Moreover, to demonstrate an equal protection violation, an inmate has the burden of proving the existence of purposeful discrimination. Hernandez v. New York, 500 U.S. 352 (1991); McCleskey v. Kemp, 481 U.S. 279, 292 (1987). Official action does not violate the Equal Protection Clause solely because it results in a disproportionate impact; proof of discriminatory intent or purpose is required to show a violation. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265 (1977); Washington v. Davis, 426 U.S. 229, 239 (1977); Stehney v. Perry, 101 F.3d 925, 938 (3d Cir. 1996). Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker selected a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. Hernandez, 500 U.S. at 360. An inmate must offer evidence specific to his own case that would support an inference that unlawful considerations played a part in the adverse decision. McCleskey, 481 U.S. at 293.

With regard to his first Equal Protection claim, Plaintiff has failed to submit any evidence from which it can be concluded that Defendants engaged in intentional or purposeful discrimination or that he was treated differently by Defendants than similarly situated persons on the basis of his race, nationality or gender with regard to the alleged misconduct. In this regard, Plaintiff received a misconduct for planting a weapon, and was removed from his job as a result of this. He has not alleged that any other inmates were accused of planting a shank and were treated differently because of their race. Additionally, Plaintiff has not stated any specific acts taken by Defendants to show any discriminatory animus attributable to them.

With regard to his second Equal Protection claim, Intelligence Captain Craig Haywood conducted an investigation into abuse of the library's VendaCard system in March, 2009 because it was believed that inmate library workers were misusing this system. As a result of this investigation, all of the inmate library workers were removed from their positions and placed under investigation. Plaintiff was in the Restricted Housing Unit at this time and was not affected by this investigation. Thus, Plaintiff lacks standing to bring this claim as it is based on actions that did not affect him. Therefore, Defendants are entitled to summary judgment on Plaintiff's equal protection claims.

## III.  <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that Defendants' Motion for Summary Judgment (ECF No. 89) be granted.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are

served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

_____
Lisa Pupo Lenihan
U.S. Magistrate Judge

Dated: October 31, 2011

cc:    Clinton Walker, EC - 4925
       SCI-Forest
       286 Woodland Drive
       P. O. Box 307
       Marienville, PA 16239-0307